UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 04-cv-02511-WYD

ROBERT A. CLAYTON,

	Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

	Defendant.

_____

**ORDER**
_____

I.	<u>INTRODUCTION</u>

	THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's applications for Disability Insurance Benefits under the Social Security Act. Plaintiff's application filed February 5, 2002 (Transcript ["Tr."] at 131-33) was denied initially. *Id.* at 126-130. A hearing was held on March 12, 2004 (*id.* at 483-520). On March 31, 2004, Administrative Law Judge ["ALJ"] Patrick B. Augustine issued an unfavorable decision, finding that Plaintiff was not disabled. *Id.* at 97-112.

	In the decision, the ALJ found at step one of the five-step sequential analysis required by law that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability. Tr. at 101-02, 111. At step two, the ALJ found that Plaintiff has the following impairments which are severe: "ischemic heart disease

-1-

(coronary artery disease) status post-angioplasty and pericarditis, degenerative cervical disc disease, osteoarthritis of the right knee, adjustment disorder with depressed mood, and personality disorder." *Id.* at 103, 111.  The ALJ also found that Plaintiff's vision and hearing deficits were not severe within the meaning of the Act.  *Id.* at 103.  At step three, the ALJ found that Plaintiff's impairments did not meet or equal a Medical Listing since "no medical or examining source has identified an impairment of listing severity."  Tr. at 104, 111.

The ALJ then proceeded to an assessment of Plaintiff's residual functional capacity ["RFC"] and examined the medical evidence as to same.  *Id.* at 104-111.  He first noted that Plaintiff was 62 years old at the time of the decision and is considered a person of advanced age.  *Id.* at 106.  He has a high school education, plus two additional years of commercial art school.  *Id.*  Plaintiff had past relevant work experience as a lithographic photographer, advertising agency manager, account executive and commercial designer.  *Id.*

The ALJ assessed Plaintiff's RFC as follows:

> despite the claimant's combined physical and mental impairments, he retains a capacity to lift and carry 20 pounds occasionally and 10 pounds frequently.  He could sit for 4 hours in an 8-hour workday and could stand and walk for a total of 8 hours during a typical workday.  The claimant could not work at heights, and should avoid exposure to temperature extremes, dangerous machinery, excessive vibration, and background noise.  He could occasionally balance, kneel, stoop, climb stairs, crawl and crouch.  Mentally, the claimant could perform complex and detailed tasks.  He is slightly to moderately limited, but not precluded, in terms of responding appropriately to work-related pressures and changes in the ordinary job routine.  The claimant is without further restriction.

Tr. at 110.  The ALJ noted that the RFC assessment was supported by the medical

records of Dr. Gonzales (10F in the record), the medical records of Dr. Grave (14F), the consultative examination of Dr. Denzel (15F), the medical records of CPI Denver Diagnostics (16F) and the medical records of Western Cardiology Associates (18F). *Id.* at 111. He stated that these sources were provided great weight. *Id.*

In assessing the RFC, the ALJ found that Plaintiff was not fully credible. *See* Tr. at 111. He noted that "the claimant's allegation that his impairments produce limitations of sufficient severity to prevent all sustained work activity is inconsistent with the medical and other evidence of record." *Id.* at 107. He further found that Plaintiff "has described daily activities that are not limited to the extent one would expect, given his disabling physical and mental complaints." *Id.*

At step four, the ALJ addressed whether Plaintiff could perform his past relevant work. Tr. at 111. The ALJ found, based on the vocational expert's ["VE"] testimony, that while an individual with the RFC found by the ALJ could not perform Plaintiff's past work as he previously performed those jobs, such individual could do the work of an account executive and commercial designer as those jobs are typically performed in the national economy. *Id.* Accordingly, the ALJ found at step four that Plaintiff was not disabled within the meaning of the Act. *Id.* at 111-112.

Upon Plaintiff's request for review, the Appeals Council stated that it found no reason to review the ALJ's decision, and denied Plaintiff's request for review. Tr. at 91-94. Plaintiff then provided supplemental evidence, including a supplemental report of his treating psychiatrist and other medical evidence. *Id.* at 9-84. The Appeals Council stated that it had reviewed the evidence and "found no reason under our rules to

reopen and change our decision." *Id.* at 7. This was the final decision of the agency, and this Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g).

II.   ANALYSIS

   A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

   B.   Plaintiff's Arguments

      1.   Whether the ALJ Did Not Properly Weigh the Medical Evidence of the Opinions of the Medical Providers

         a.   Whether the ALJ Erred at Step Three

Plaintiff asserts that the medical evidence demonstrates a documented anxiety disorder that meets the Medical Listing criteria, as supported by his treating psychiatrist

and treating cardiologist. In order to prevail at step three, the claimant must point to objective medical evidence in the record that supports a finding that he meets a Listing. *Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988) (holding that "the claimant's descriptions, alone, are not enough to establish a physical or mental impairment" and that it is the claimant's responsibility "to elicit [] direct clinical findings from his own physicians as to the presence" of Listings requirements).

Plaintiff asserts that he meets the requirements of Listing 12.04 as to Affective Disorders, Listing 12.06 as to Anxiety Related Disorders, and Listing 12.08 as to Personality Disorders. However, he has not pointed to objective medical evidence in the record that shows that he meets the requirements of these Listings.

Further, I have independently reviewed the medical evidence in this case, including the reports of Plaintiff's treating psychiatrist, Dr. Graves, and treating cardiologist, Dr. Gonzales.[1] I find nothing in this evidence that supports a finding that Plaintiff's mental impairments meet the Listings he relies on. Specifically, as to Listing 12.04, I find nothing in the record that shows Plaintiff's impairments meet or equal the requirements of Sections B or C of that Listing. As to Sections 12.06 and 12.08, I find nothing in the record that shows that Plaintiff meets the requirements of those sections.

                b.      <u>Whether the ALJ Did Not Otherwise Properly Weigh the Medical Evidence</u>

Plaintiff argues that, even beyond the step three analysis, the ALJ erred in assessing the medical evidence and the opinions of the treating providers.

---

[1] A detailed discussion of this evidence follows in the next section.

Specifically, it is argued that the ALJ erred in rejecting the opinions of Plaintiff treating cardiologist Dr. Gonzales and his treating psychiatrist Dr. Graves. Plaintiff also contends that the ALJ's finding that Plaintiff did not have a disability which lasted for more than a year is in direct conflict with the evidence, including the medical opinions of Dr. Graves and Dr. Gonzales.

I first address the duration argument. While the ALJ found that Plaintiff had severe impairments at step two without any discussion of duration, he did make certain duration findings during the step three analysis. Specifically, he found that the evidence shows that Plaintiff "has essentially recovered from his coronary artery disease and resulting pericarditis, with no disabling limitations lasting a period of at least 12 continuous months." Tr. at 104. As to mental impairments, the ALJ stated, "the evidence as a whole, including testimony received by the claimant, does not show that he has been more than moderately limited from a mental health standpoint for at least 12 continuous months." *Id*. Thus, he found that the evidence is not persuasive in demonstrating a listing-level mental impairment. *Id*.

From the foregoing, it is clear that the ALJ's findings on duration went only to whether Plaintiff's impairments met or equaled a listing at step three. I previously found that the evidence does not support a finding that Plaintiff meets a Listing at that step. At step two, as previously noted, the ALJ did not rely on duration but instead found that Plaintiff had severe impairments including coronary artery disease and mental impairments. Thus, the ALJ's findings about duration do not impact the remaining issues to be resolved. I do find, however, that to the extent the ALJ concluded that

Plaintiff's heart condition and mental impairments did not last for more than 12 months, this does not appear to be supported by substantial evidence for the reasons argued by Plaintiff and based on my discussion of the evidence below.

I next address whether the ALJ properly weighed the medical evidence and the opinions of the treating practitioners. In making this determination, I note that an ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted); *see also* 20 C.F.R. § 404.1527(d)(2); Soc. Sec. Ruling 96-2p. However, a treating physician's report can be rejected "if it is brief, conclusory and unsupported by medical evidence" or is "not supported by specific findings." *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). "The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

I first address the ALJ's findings as to Plaintiff's physical impairments. The ALJ found that the 2002 and 2003 reports of Plaintiff's treating cardiologist, Dr. Gonzales, described Plaintiff as doing well from a cardiovascular standpoint, having recovered nicely with treatment. Tr. at 108 (citing Exhibits 10F, Tr. at 375-76, 18 F, *id.* at 425-26, and 20F, *id.* at 463-76). The ALJ appeared to reject the findings of physical impairments because there was a psychological overlay that was not within

Dr. Gonzales' field of expertise in the mental health field. *Id.* at 109. He also rejected Dr. Gonzales' opinion that "because of the multitude of medical problems and the complicating factors of anxiety neurosis and depression", Plaintiff is incapable of continuing on with his past work "and that it was "increasingly unlikely that he will be able to perform any sort of meaningful work-related activity." *Id.* at 426. The ALJ stated that this was an issue reserved to the Commissioner.

I find that the ALJ did not properly weigh the opinions of Dr. Gonzales. While the October 2002 report noted that Plaintiff was fairly stable from a cardiovascular standpoint (Tr. at 375), the later report of Dr. Gonzales in August 2003 clarified that Plaintiff was continuing to experience problems. *Id.* at 425-26. Specifically, while both reports state that Plaintiff has improved with treatment and is relatively stable from a cardiovascular standpoint, the 2003 report found that Plaintiff "has become somewhat of a cardiac cripple, because intermixed with his anxiety neurosis and depression, the patient sometimes somatizes his symptoms and, indeed, many times has had exacerbations of his chest pain and some degree of shortness of breach also surrounding his chest pain and complicating his chest pain episodes." *Id.* The report further noted that "[w]hile from a cardiological standpoint, there are no objective findings to suggest that Mr. Clayton is incapable or restricted from performing work-related, stress, or aggressive physical activity, symptomatically he continues to have breakthrough as far as his chest pressure episodes that are again seemingly related directly to any sort of physical and/or emotional duress." *Id.* at 426. He stated on this point that "[i]t can be very difficult for patients in this situation to be able to separate a

true physical symptom and those that are somatized because of underlying psychological duress." *Id.*

The ALJ ignored the findings of chest pain, instead selectively picking out the portions of the report that stated Plaintiff was stable and doing well from a cardiac standpoint. The ALJ also ignored the report of continuing pulmonary discomfort (shortness of breath). Indeed, the ALJ found, contrary to Dr. Gonzales' report, that despite some pulmonary complaints in February 2002, Plaintiff has not continued to complain of significant pulmonary problems per the record. Tr. at 109. An ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678, 2004 WL 2810224 (10th Cir. 2004).[2] The ALJ also failed to discuss the Echocardiogram Report in November 2003 that showed left ventricular fraction was 55%. Tr. at 468-69. For the ALJ to conclude that Plaintiff's cardiac problems had essentially resolved is not supported by substantial evidence, and requires a remand of this case.

On remand, the ALJ must properly consider all the findings of Dr. Gonzales and the other medical evidence regarding Plaintiff's cardiac condition, and determine the impact on Plaintiff's RFC. This includes an evaluation of Dr. Gonzales' report of chest pain and shortness of breath, even despite the lack of objective findings or formal testing. The Tenth Circuit holds that when an ALJ decides that a treating physician's

---

[2] While I acknowledge that citation to unpublished opinions is disfavored, I find that this and the other unpublished opinions cited in this Order have persuasive value with respect to a material issue that has not been addressed in a published opinion and will assist the court in its disposition" of the case. 10th Cir. R. 36.3(B).

opinions are not dispositive and not entitled to controlling weight, that does not allow him to reject the opinions outright. *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004). Instead, the treating physician's opinions are "'still entitled to deference and [should be] weighed using all of the [relevant] factors.'" *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). The ALJ's opinion does not reflect that he gave Dr. Gonzales' opinion on these issues deference or that he gave consideration to what lesser weight the opinion should be given. Further, he did not analyze the relevant factors set out in 42 U.S.C. § 404.1527.

I also note that while the ALJ was not required to give controlling weight to Dr. Gonzales' opinion about Plaintiff's inability to work, he was not entitled to reject the opinion outright. The ALJ was required to evaluate this opinion to the extent it has a bearing on the issue of disability. *Miller v. Barnhart*, 43 Fed. Appx. 200, 2002 WL 1608452 at *3 (10th Cir. 2002) ("[t]he adjudicator is required to evaluate all evidence in the case . . . including opinions from medical sources about issues reserved to the Commissioner"). Finally, as to psychological impairments discussed in the report, Dr. Gonzales noted that these problems were related to the cardiac problems, *i.e.*, intermixed with same. The ALJ was thus not entitled to simply reject Dr. Gonzales' opinions on this issue out of hand on the basis that he lacked expertise on the issue. Instead, he should have considered these opinions in conjunction with the opinions of Plaintiff's treating psychiatrist, who I note supported the findings of Dr. Gonzales.

In determining Plaintiff's RFC as to physical impairments, the ALJ appeared to rely on the consultative findings of Dr. Denzel made on September 12, 2003. *See* Tr.

at 108.  I have found nothing else in the record that supports the RFC.  The ALJ found that Dr. Denzel's opinion, with one exception, was "generally supported by examination findings and is consistent with other evidence."  *Id.* at 109.  The ALJ rejected, however, Dr. Denzel's most significant finding of impairment; namely, that Plaintiff needs frequent rest periods and is unable to stand or walk for more than 30 minutes at a time.  *Id.* at 108; *see also* Dr. Denzel's findings at 406.  The ALJ found that while the evidence supports some exertional limitations caused by Plaintiff's history of heart disease, cervical degeneration and right knee arthritis, "the lack of ongoing treatment particularly for the two latter conditions is not fully consistent with the degree of functional impairment indicated by Dr. Denzel."  *Id.* at 108-09.  The ALJ concluded that the objective findings of record are not consistent with a need to change position every thirty minutes.  *Id.* at 109.  Thus, the ALJ rejected this finding, but gave the remainder of Dr. Denzel's opinion "great weight".  *Id.*

The findings of Dr. Denzel will obviously need to be reevaluated on remand in connection with the reweighing of Dr. Gonzales' findings and the other medical evidence.  However, I also find that the ALJ erred in not properly weighing Dr. Denzel's opinion.  First, I note that it does not appear from the record that Dr. Denzel is a cardiologist.  Thus, his findings cannot be used to reject the findings of Dr. Gonzales as to Plaintiff's cardiac and pulmonary problems.

Second, I find that the decision to reject the significant functional limitation found by Dr. Denzel as to Plaintiff's need for frequent rest periods and frequent changes of position is not supported by substantial evidence.  While Dr.  Denzel noted that he did

not have medical records to confirm or deny degenerative disc disease, he did find from an objective standpoint that Plaintiff had range of motion abnormalities and difficulties with maneuvers in the exam room. Tr. at 405. The ALJ's conclusion that objective findings of record are not consistent with a need to change position every thirty minutes ignores these findings, and appears to be an attempt to substitute the judgment of the ALJ for that of Dr. Denzel. Further, the lack of treatment for cervical degeneration and/or arthritis does not provide a basis to ignore the objective findings made by Dr. Denzel that supports his conclusion that impairments exist, particularly without any medical evidence that refutes these findings. *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("'[i]n choosing to reject [a] . . . physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*'") (emphasis in original) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)).

Finally, while the ALJ stated he gave great weight to the remainder of Dr. Denzel's report, he did not include some of Dr. Denzel's functional limitations in the RFC. For example, Dr. Denzel found that Plaintiff should be restricted from lifting more than 0 pounds from floor to waist, 20 pounds from waist to shoulders, and 0 pounds to both shoulders. Tr. at 406. The RFC found by the ALJ was not consistent with these findings, as it stated that Plaintiff has the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently. Tr. at 112. Further, Dr. Denzel stated that Plaintiff should be

restricted from pushing and pulling more than 40 pounds, which was not in the RFC. *Id.* The ALJ did not explain why the RFC was inconsistent with those findings of Dr. Denzel that he purportedly gave weight to. This was error. *See Wiederholt v. Barnhart*, 121 Fed. Appx. 833, 2005 WL 290082, *5 (10th Cir. 2005) ("[b]ecause the ALJ omitted, without explanation, impairments that he found to exist . . ., the resulting hypothetical question was flawed").

For all of these reasons, I find that a remand is proper in connection with the ALJ's weighing of the medical evidence and the ALJ's findings as to Plaintiff's physical impairments. I also note that the new evidence submitted by Plaintiff to the Appeals Council needs to be addressed on remand. While some of the medical evidence related to the time frame after the ALJ's decision and is thus not chronically relevant, there was evidence, including abnormal echocardiogram reports, that need to be assessed by the ALJ on remand. *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("the Appeals Council must consider evidence submitted with a request for review 'if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision'"; if the evidence qualifies, it becomes part of the record to be assessed in evaluating the denial of benefits) (quotations omitted).

I also find that a remand is proper in connection with the ALJ's findings on Plaintiff's mental impairments. The ALJ stated that "[m]ost of the more recent evidence of record indicates greater functional limitations caused by the claimant's mental impairments. . . ." Tr. at 109. He then noted that treating psychiatrist Dr. Graves

-13-

indicated in January 2003 that despite symptomatic improvements over the past several months, Plaintiff continues to struggle with concentration and attention deficits, occasional anxiety spells and fatigue. Tr. at 109 (citing 14F).[3] The ALJ appeared to discount Dr. Graves' opinion, stating that Dr. Graves "indicated that no special testing had been conducted as part of his treatment of the claimant . . . . [n]evertheless, he essentially found that the claimant would be unable to work until June 2003, at which time he could likely return to gainful employment at least on a part-time basis." *Id.*

I find on this issue that a treating psychiatrist's opinion cannot be rejected simply on the basis that the psychiatrist did not conduct "special testing". Dr. Graves had treated Plaintiff for a significant period of time and was able to observe Plaintiff in a clinical setting during those visits. As such, he did not need to conduct "special tests" to observe the cognitive impairment, anxiety spells and fatigue. *See Thomas v. Barnhart*, 147 Fed. Appx. 755, 759, 2005 WL 2114163 (10th Cir. 2005) ("[a] psychological opinion . . . 'may rest either on observed signs or on psychological tests'") (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)). Dr. Graves also gave specific reasons why he thought that Plaintiff was unable to perform his past work as a photographer, including decreased exercise tolerance and decreased energy levels. The ALJ improperly ignored these findings.

The ALJ then discussed Dr. Graves' report of June 16, 2003, which found that Plaintiff was "currently totally disabled to engage in his regular profession." *Id.* at 109.

---

[3] The report was actually issued in February 2003, not January. Tr. at 401.

The ALJ found on this issue that Dr. Graves dated Plaintiff's disabling level of impairment back to December 2001, before he had personally treated Plaintiff. *Id.* Further, the ALJ found that other than noting decreased concentration, attention span and low energy levels, Dr. Graves "did not offer any specific functional limitations to support his conclusory assessment." *Id.* The ALJ further found that this is an issue reserved to the Commissioner. *Id.* While the ALJ recognized that Dr. Graves did make some objective findings, he found that they indicated only mild anxiety and a moderate level of depression that did not support a finding of disabling mental deficits. *Id.* Finally, the ALJ found that the medical advice given to Plaintiff by Dr. Graves and noted in the report; namely, encouraging development of a home studio and social interaction, was not consistent with a disabling level of mental impairment and "instead supports a finding that the claimant remains capable of doing his past work as an account executive and commercial designer." *Id.* at 109-110.

Many of these findings as to the June 2003 report of Dr. Graves are lay judgment and/or are not supported by substantial evidence. For example, the ALJ finds that though the report indicates decreased concentration, attention span and low energy levels, Dr. Graves "did not offer any specific functional limitations to support his conclusory assessment." This is inconsistent and not supported, as functional limitations were noted. *See* Tr. at 423-24.

Further, the ALJ finds that although there are objective findings of mental impairments, they indicate "only mild anxiety and a moderate level of depression on the Beck Inventory, failing to support disabling mental deficits." *Id.* at 109. While the ALJ

was correct in his assessment of the objective findings, the conclusion that this means Plaintiff cannot have disabling mental deficits does not adequately account for the other functional limitations found by Dr. Graves, including the subjective complaints. *See Thomas*, 147 Fed. Appx. at 759-60 ("[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements . . . . [t]he ALJ cannot reject [a psychiatrist's] opinion solely for the reason that it was based on [the claimant's] responses because such rejection impermissibly substitutes [the ALJ's] judgment for that of [the psychiatrist]." Further, if the ALJ felt the objective findings were inconsistent with Dr. Graves' conclusions, he should have contacted Dr. Graves to explain the inconsistency. *See McGoffin*, 288 F.3d at 1252 (citing 20 C.F.R. § 404.1512(e)(1) (2001)). Finally, the ALJ's finding that Dr. Graves' suggestion that Plaintiff develop a home studio and engage in social interaction meant that Plaintiff did not have a disabling level of mental impairment and also could not perform his past work is pure speculation and/or an improper lay judgment.

      The ALJ then turned to Dr. Graves' most recent letter dated March 8, 2004 (Tr. at 427-28), that summarized his treatment of Plaintiff. The ALJ stated that this letter "again suggests an inability to sustain gainful employment on the basis of [Plaintiff's] mental impairments. . . . " *Id.* at 110. The ALJ found that, "[l]ike the previous letters, Dr. Graves' recent letter fails to cite any specific work-related limitations on mental functioning to support his finding of 'disabled'". *Id.* This finding ignores or improperly discounts the extensive discussion of Plaintiff's continuing problems including depression with low self-esteem, anhedonia, hypersensitivity to criticism, sleep

disturbance, absence of creative work output, continued hopeless, helpless feelings, and significant anxiety symptoms. *Id.* at 427. Further, the ALJ ignored Dr. Graves' discussion of the scores on the WAIS-III conducted by Dr. Fontenot which he states are far below what one would expect of an individual with Plaintiff's education and level of professional attainment and which suggest interference by depression and anxiety and cognitive impairments. *Id.* at 428.

The ALJ concluded as to Dr. Graves' opinions that he gave them "some but not great or controlling weight," and that "[t][he specific functional limitations which she [sic] offered are not inconsistent with the findings in this decision." Tr. at 110. It is impossible from the decision to determine to what extent the ALJ gave Dr. Graves' opinion weight, as it appears that the ALJ did not adopt any of the specific functional limitations noted by Dr. Graves. Thus, the ALJ's statement that he gave Dr. Graves' opinions some weight appears unsubstantiated. I find that a remand is proper not only because many of the ALJ's reasons for rejecting Dr. Graves' opinions were improper and/or not supported by substantial evidence, as discussed above, but also because the ALJ failed to adequately discuss the weight he gave to Dr. Graves' opinion. Further, on remand, Dr. Graves' opinions must be properly weighed using the relevant factors set out in 42 U.S.C. § 404.1527.

Finally, I note that Dr. Graves wrote a letter after the ALJ's decision clarifying his opinions and specifically rebutting Dr. Fontenot's findings. Tr. at 30-34. This letter was submitted to the Appeals Council, was chronologically relevant as it dealt with Dr. Graves' treatment of Plaintiff, and provided significant evidence in rebuttal to

Dr. Fontenot's decisions. This letter is part of the record and provides a further basis for my finding that the ALJ's decision as to Plaintiff's mental impairments is not supported by the record. This letter must be evaluated on remand, particularly as it relates to Dr. Fontenot's opinion that the ALJ gave great weight to.

Since I find that the ALJ erred in properly weighing Dr. Graves' opinion, on remand the ALJ will thus need to reassess Dr. Fontenot's opinion and the findings of the other consultative examiners. For the record, however, I note several problems with the ALJ's findings as to Dr. Fontenot. The ALJ found that Dr. Fontenot's report was "[n]ot inconsistent with the findings in this decision", in that she found that there was no impairment on Plaintiff's ability to maintain attention and carry out simple work related tasks. *Id.* at 110. However, a finding that Plaintiff is not impaired in connection with simple work related tasks (*id.* at 419) does not translate to a finding that Plaintiff can perform complex and detailed tasks, as stated in the RFC. Indeed, I have found no medical evidence that supports this RFC finding. Further, Dr. Fontenot found that Plaintiff had certain impairments which were not fully addressed in the RFC. For example, she found that Plaintiff had slight to moderate limitations in the ability to maintain employment, adapt to the work environment, to tolerate the stressors of the work environment and complete a normal work day. *Id.* The RFC did not track this, failing to mention the limitations in the ability to maintain employment and complete a work day and modifying the other impairments. *See id.* at 112. This is something that should be addressed on remand. Finally, the fact that Dr. Fontenot conducted

objective tests in support of her assessment does not provide a basis to completely discount Dr. Graves' assessment based on his lengthy treatment history.

In conclusion, since I find that the ALJ did not properly weigh the treating physicians' findings and other medical evidence, this case must be remanded to the Commissioner.

### B. Whether the ALJ Erred in Assessing Plaintiff's RFC and Credibility and In Finding that Plaintiff Could Perform His Past Relevant Work

Plaintiff argues that there is no support for the RFC found by the ALJ, and that the ALJ's findings are in conflict with Plaintiff's testimony and the medical records. Plaintiff also argues that the ALJ erred at step four of the analysis. The RFC and Plaintiff's ability to perform his past work will obviously need to be reassessed on remand after the medical evidence is properly weighed. I also note that on remand, the ALJ should take into account my findings in the previous section that the RFC did not take into account all the impairments that the ALJ stated he accepted and/or gave weight to. This error would require a remand even if the medical evidence had been properly weighed. I also note that on remand, the ALJ must take into account Plaintiff's age in making the RFC assessment and any non-exertional factors that are supported by the evidence.

Finally, as to credibility, Plaintiff argues that the ALJ's findings on this issue (Tr. at 111, n. 4) were not supported by the record. This should also be reassessed on remand in light of the reweighing of the medical evidence that will be conducted.

III.     CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded for further fact finding consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g) to make further findings consistent with this Order.

Dated March 2, 2006

                   BY THE COURT:


                   s/ Wiley Y. Daniel
                   Wiley Y. Daniel
                   U. S. District Judge